**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DELANDIS ADAMS, B69320, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 07 C 4897 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| DEIRDRE BATTAGLIA, RODNEY ) | |
| BRADY, and LARRY STIGLER, ) | Magistrate Judge Jeffrey Cole |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Delandis Adams ("Plaintiff" or "Adams") filed this action against defendants Deirdre Battaglia, Rodney Brady, and Larry Stigler (collectively "Defendants") alleging violation of Adams' Eighth Amendment rights arising from a routine shakedown at Stateville Correctional Center ("Stateville") on September 1, 2005, during which Adams was handcuffed for over five hours in restraints that Adams claims were too tight. Defendants move for summary judgment pursuant to Rule 56 arguing that the undisputed facts entitle them to judgment as a matter of law [131]. For the reasons that follow, the motion is granted.

**Background**

The following facts are undisputed unless otherwise specified. Plaintiff Delandis Adams, B69320, brought this action pursuant to 42 U.S.C. 1983 against Dee Battaglia, Rodney Brady, and Larry Stigler alleging cruel and unusual punishment in violation of the Eighth Amendment. (Pl. First Amend. Compl.) Plaintiff is serving an eighty-year sentence for murder and aggravated kidnapping. At all relevant times, plaintiff was incarcerated at Stateville Correctional Center in Joliet, Illinois. On September 1, 2005, Dee Battaglia was the Warden of

Stateville, Rodney Brady was the Northern SORT Commander for the Illinois Department of Corrections and was in command of the tactical operations, and Larry Stigler was a Sergeant correctional officer.

On September 1, 2005, a facility-wide "mass" shakedown was performed at Stateville to search for illegal drugs and contraband. During a mass shakedown, such as this, the prison is placed on the most restrictive level of security, known as a level one lockdown. Prisoners are not handcuffed during normal operating procedures. Mass shakedowns and level one lockdowns are not normal operating procedures. During a mass shakedown, inmates are handcuffed for purposes of security, custody, and control. To fit different sized people, handcuffs have a ratcheting system that makes them adjustable.

Plaintiff alleges that because of his size (six feet tall and over 300 pounds), and because of medical problems with his wrists, he needed either a double set of handcuffs or an extra large set of handcuffs. Plaintiff alleges that during the September 1, 2005, mass shakedown he was placed in a single-set of regular handcuffs that were too tight and cut into his wrists. Plaintiff does not know whether he had a current valid medical permit specifying that he should be handcuffed differently. Plaintiff's handcuffs were removed when he was returned to his cell at the end of the shakedown.

Plaintiff testified at his deposition that he complained to approximately twenty correctional officers that his handcuffs were too tight and they were hurting his wrists. Defendant Stigler's responsibilities during the shakedown included monitoring the gymnasium and the yard where the inmates were held and ensuring that the staff assigned to him carried out their duties. Defendant Stigler offered and tried to loosen plaintiff's handcuffs after plaintiff complained they were too tight. At his deposition, defendant Brady testified that if, during a

mass shakedown, he learns that an inmate's handcuffs are too tight for him given his size, he would put the inmate in two pairs of handcuffs instead of one pair. None of the defendants recalled having a conversation with plaintiff.

Plaintiff was examined at the health care unit on September 9, 2005. Plaintiff testified that the nurse and doctor that examined him observed that his wrist was lacerated, swollen and numb. Dr. Aguinaldo saw plaintiff on September 15, 2005, for complaints of numbness in his left wrist that had lasted for two weeks. Dr. Aguinaldo did not find swelling or tenderness in plaintiff's left wrist. Dr. Aguilnaldo testified at his deposition that handcuffs can cause compression injuries and possible nerve damage, but he could not give any opinion as to what caused plaintiff's wrist pain. Dr. Aguinaldo saw plaintiff for a follow-up examination on September 29, 2005. Plaintiff still complained of numbness. Dr. Powers, the medical director at Tamms Supermax Facility, saw plaintiff on September 15, 2006, for complaints of a numb left wrist. To rule out a nerve injury, Dr. Powers will do a grip test, use a neurological pinwheel, inspect the area for swelling and bruising and do range of motion tests. A "neurological pinwheel" is a wheel of pins on the end of a six-inch handle that is rolled over the surface of a patient's skin to determine the location of reduced sensation. If Dr. Powers suspects a nerve injury, he would refer the patient to a specialist. On February 9, 2007, Adams saw Dr. Aguinaldo again for numbness in his left wrist. Dr. Aguilnaldo performed a grip test and found weakness in Adams' left hand, which he attributed to "post-traumatic" pain. Dr. Zhang saw plaintiff on December 29, 2009, June 1, 2009, and April 27, 2010, for his wrist pain, but could not give an opinion as to what was causing plaintiff's wrist pain. Plaintiff was also seen by Dr. Ngu at Stateville for complaints related to his wrist. On April 16, 2010, Dr. Gosh issued plaintiff a six month medical permit for front handcuffing based on chronic wrist pain.

There are three main nerves in the wrist. Damage to these nerves can result in symptoms of decreased sensation, numbness, tingling, and diminished grip. A compression injuring can occur to the wrist nerves if a person is forced to wear handcuffs that are too tight for an extended period of time. Removing the handcuffs shortly after symptoms begin can prevent a compression injury to one of the nerves in the wrist.

## **Legal Standard**

A party is entitled to summary judgment if all of "the pleadings, the discovery and disclosure materials of file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court construes all reasonable inferences in the light most favorable to the non-moving party. Abdullahi v. City of Madison, 423 F. 3d 763, 773 (7th Cir. 2005). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. Fed. R. Civ. P. 56(e); Celotex v. Catrett, 477 U.S. 317, 324 (1986).

## **Discussion**

Plaintiff filed this cause of action claiming that during a facility-wide shakedown at Stateville on September 1, 2005, defendants failed to remove plaintiff's handcuffs and replace them with either two handcuffs or another type of restraint for five hours causing injuries to his left wrist that persist to this day. Defendants move for summary judgment arguing that Adams' alleged deprivation was not sufficiently serious, defendants did not act with deliberate indifference, and Adams has not shown that he suffered an injury.

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" that is "totally without penological justification." Hope v. Pelzer, 536 U.S. 730, 737 (2002) (internal citations omitted). Only conduct that is "calculated harassment" or "maliciously motivated" and unrelated to institutional security is considered unconstitutional. Whitman v. Nesic, 368 F.3d 931, 934 (7th Cir. 2004). Evaluation of Eighth Amendment claims is a two step process with both an objective and a subjective inquiry. Id. "The objective prong asks whether the alleged deprivation or condition of confinement is 'sufficiently serious' so that 'a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). If the conditions of confinement meet the objective test, then the court must determine whether the prison official subjectively knew that the inmate faced a substantial risk of serious harm and the prison official disregarded that risk by failing to take reasonable measures to prevent the harm. Id. The Seventh Circuit has rejected claims of Eighth Amendment violations where conditions are temporary, affect few inmates, and cause no concrete harm. Harris v. Fleming, 839 F. 2d 1232, 1235 (7th Cir. 1988).

Under the objective test, deprivations to inmates must be "extreme" and mere discomfort is not sufficient to sustain an Eighth Amendment conditions of confinement claim. Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). Here, plaintiff's alleged deprivation, that he was confined in handcuffs that were too tight due to his physical size for five hours during a facility-wide shakedown, do not rise to the level of a constitutional violation. Although certainly unpleasant, as in Cunningham v. Eyman, where the plaintiff spent 16 hours in shackles and four to five hours in soiled clothing, these hardships were temporary and not sufficiently severe to implicate the Eighth Amendment. See Cunningham v. Eyman, 17 Fed. Appx. 449, 454 (7th Cir. 2001). The

court in Key v. McKinney, found no constitutional violation where a prisoner was restrained in handcuffs for 24 hours, making it more difficult for him to relieve himself. See Key v. McKinney, 176 F.3d 1083, 1086 (8th Cir. 1999). Moreover, in this case, there is ample unrefuted testimony from Rodney Brady and Larry Stigler that handcuffing of inmates for the duration of a facility-wide shakedown is necessary to maintain institutional order and security. Thus, Adams' handcuffing was not without penological justification. Accordingly, this Court finds that Adams has not put forth sufficient facts demonstrating that a constitutional deprivation.

Similarly, in three other cases arising from the September 1, 2005, shakedown at Stateville, members of this district court have also found the conditions of confinement during that incident did not implicate the Eighth Amendment. In Cruiel v. Larry Stigler and Rodney Brady, No. 06 C 5880, 2008 U.S. Dist. LEXIS 32518 (N.D. Ill. Mar. 31, 2008), Judge Zagel concluded that the deprivations experienced by the inmates were not severe enough to survive summary judgment. In Ames v. Larry Stigler and Rodney Barry, No. 07 C 430, slip. op. at 6 (N.D. Ill. Sept. 3, 2009), Judge Gettleman also granted summary judgment in favor of defendants, stating that "[a]lthough the conditions during the shakedown seem unnecessarily severe, the court notes that this was a single occasion, a special shakedown requiring the entire cell block to be shut down for a thorough drug search because of drug problems in the cell block." In Hernandez v. Dee Battaglia, Judge Bucklo also granted summary judgment in favor of the defendants, finding that the defendants had "put forward evidence that, for safety purposes, the inmates [were] handcuffed during prison shakedowns." Thus, despite the plaintiff in that case claiming that his wrists were swollen for three days and he sustained pain in his right shoulder and wrists from being handcuffed with his hands behind his back for eight to nine

hours, the court found no actionable deprivation under the Eighth Amendment. See Hernandez v. Dee Battaglia, 673 F. Supp. 2d 673, 675-677 (N.D. Ill. 2009).

Even though this Court finds the deprivation alleged to be insufficiently serious to violate the Eighth Amendment, this Court will nevertheless address the subjective prong of the analysis. This Court turns to the subjective test to determine whether defendants Battaglia, Brady and Stigler had the requisite subjective knowledge that Adams faced a substantial risk of serious harm and disregarded that risk. Farmer, 511 U.S. at 837. At a minimum, an inmate must put forth evidence to support an inference that the defendants had "*actual* knowledge of *impending* harm *easily* preventable." See Turner v. Miller, 301 F.3d 599, 603 (7th Cir. 2002) (quoting Delaney v. DeTella, 256 F.3d 679, 683 (7th Cir. 2001)) (emphasis in original).

Here, there is no evidence that defendants had actual knowledge that Adams would suffer the harm that he has alleged. There is also nothing in the record to indicate that any of the defendants knew that plaintiff had problems with his wrist. Defendants testified that inmates are handcuffed during shakedowns, but other types of restraints may be used such as leather restraints for people on dialysis or large handcuffs or leg irons if regular handcuffs do not fit or if the inmate has a medical permit. Plaintiff testified in his deposition that he did not know whether he had a valid medical permit allowing him to have different restraints.

Adams also testified that he complained to approximately twenty officers that he had problems with his wrist and the handcuffs were causing pain. However, none of the defendants recall having such a conversation with plaintiff. In fact, plaintiff admits that defendant Stigler offered and tried to loosen his handcuffs after plaintiff complained about his handcuffs being too tight. Defendant Battaglia, as warden and administrator oversees the facility and staff. Aside from plaintiff's own testimony that he "hollered out to him, Commander Brady, can I talk to you,

I have a problem, I need two cuffs, et cetera, et cetera," and that defendant Brady "looked him off," there is in the nothing in the record to suggest that either Battaglia or Brady had direct interactions with inmates during the shakedown. Moreover, plaintiff has not put forth any evidence to show that just because other forms of restraints can be used, that it is cruel and unusual punishment not to use two handcuffs based on an inmate's complaints. Even if this Court found defendants were negligent, mere negligence does not satisfy the deliberate indifference standard for purposes of the Eighth Amendment. Turner v. Miller, 301 F.3d 599, 603 (7th Cir. 2002). Accordingly, there is nothing in the record to show that defendants had actual knowledge of an impending serious harm and acted with deliberate indifference.

Additionally, there is nothing in the record that plaintiff's alleged injuries resulted from the handcuffing. Although there is ample testimony regarding plaintiff's complaints of wrist pain and numbness, no medical testimony is offered giving an opinion as to the cause of the pain and numbness. Dr. Aguilnaldo testifies only that it is possible that five hours in too tight handcuffs can possibly cause nerve injury from compression. Dr. Aguinaldo did not opine that plaintiff's wrist pain and numbness was a nerve injury or that it was caused by the handcuffing. No doctor testified that plaintiff had a nerve injury or even that they even suspected nerve damage. There is no medical testimony in the record stated to a reasonable degree of medical certainty that the manner in which plaintiff was handcuffed on September 1, 2005, caused an injury to plaintiff. Summary judgment is the point in a lawsuit "when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Moss v. Ameritech Servs., Inc., 166 Fed. Appx. 849, 851 (7th Cir. 2006). Mere speculation or conjecture is insufficient to create a genuine issue of material fact and survive summary judgment. See, e.g., Delapaz v. Richardson, 634 F.3d 895, 901 (7th Cir. 2011).

**Conclusion**

Accordingly, even when viewed in the light most favorable to plaintiff, based on the foregoing there is no genuine issue of material fact to support plaintiff's claim that defendants either acted with deliberate indifference, that he suffered a serious deprivation or that he suffered any injury as a result of defendants' actions. Therefore, defendants are entitled to judgment as a matter of law. Defendants' motion for summary judgment is granted. Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED.


Date: May 24, 2011.

Entered:_____
Sharon Johnson Coleman